The next case called for oral argument is Yarber v. Patton. Counsel, whenever you are ready, you may proceed. Thank you, Justice Goldenhurst. Good morning. Good morning. Name, please? Walden Hall, attorneys, for the defendant in this case, Justice Patton. We presented this court an issue that the court has addressed many times, though I think this one has a little different twist to it. As I'm sure you're aware, this is one that this court initially denied on the 306 petition, and the Supreme Court, your supervisory authority, suggested that the court reconsider that, and that's why we're here today. I think that the issue that is novel, if that's the right term, is the question of whether the father of this tragically deceased child is a proper party defendant in this case. The position, of course, that the defendant has is that she is a resident of Franklin County, that this tragic occurrence took place in West Frankfort, Franklin County, and that Mr. Adams had brought the child to Franklin County at the time that this occurred. Let me make sure I understand how you started out. Are you telling us that the first question, or the main question, is that the father was joined to fix venue? That's what I contend, yes, Your Honor. That's correct. So do you concede that if the father is properly joined, that there's no issue on forum? I do not. That's raised as well. Okay. So there's two issues. There's two issues, absolutely. Absolutely. So let me ask you, do you think that it is the court's, trial court's, job to determine whether or not there is a valid cause of action, that there is a question of fact here to be resolved? Well, when you say question of fact... With regard to parental immunity. I think... You now have a two-count complaint. You have Wolfe v. Watten. We do. And I think that, you know, I don't represent the father. I represent the driver of the car. I understand. So it's a little bit of an unusual position. And he's not appeared. The father has not appeared. But you've taken his deposition. We have taken his deposition. He's homeless. Well, you allege homeless. There is some controversy. He's got to live somewhere, doesn't he? Yeah, he does. He does. In a county somewhere. He bounces around between several different locations on a transient basis, all within St. Clair County. I can't prove otherwise in the record. The important part of that, I think, is that when you look at the potential causes of action that could exist against him, they're all to do with supervision. Count two of the complaint sounds in negligent supervision. Count three of the complaint sounds in Wolfe v. Watten supervision. But if you look at the allegations in both of those counts, they're bare bones. But isn't that the subject of a 2-615 or a 2-619 motion? It could be. But you didn't file anything like that. Well, I haven't gotten past the issue of venue at this point. So now we're left with the issue of whether or not those causes of action sufficiently allege parental immunity. We can also look past the allegations of the complaint to the underlying facts. I know of nothing that prohibits that in this context and examine the deposition testimony of Mr. Adams, Brandon Adams, the father. Because his testimony is that at the time this happened, he did not know the child was in the road and that it was all in a very short time span. One of the other adults gave them all a treat. They all went outside. He was getting some meat ready for the grill, as I recall it. And the next thing he knew, this had occurred. Well, on a motion, as you've claimed that this is just a fixed venue, what is the standard that we are to use to review the court's ruling? I mean, are we to reexamine the facts? I think that in terms of any legal issue, it's deliberate. And really, there have been no facts determined. But you're saying we should look past the complaint. And that's why I'm asking the question. I think you have to. And I think that would be a reason. Why? If the complaint hasn't been challenged. Well. Right? The complaint hasn't been challenged. No 2-615. No 2-619. You know, it's a period for Mr. Adams to defend it and to challenge those things. But you haven't challenged the plaintiff's allegation. Well, I actually have. I've said that in the context of this motion. A venue. A venue. I've said that there are no factual allegations that establish it. Well, for one. But that's why I'm trying to figure out what we should use. Are we stuck with using the complaint? Or can we use your deposition testimony and everything else? I know of no prohibition that would foreclose the court from using the deposition testimony. I'm using that as an example, not as the sole. No, I understand. And I don't know of any concept that's in the briefs or that occurs to me that would prohibit the court from doing that. Because you have to look at good faith, the probable cause, and whether or not this party has made a defendant solely for purposes of fixing venue. All under the venue statute. And so the only way that you could conduct that examination would be a somewhat factually intensive review of what has been established. Isn't there also an underlying legal question as to whether or not the immunity even applies? I think there is. If you look at the case decision, I think that abrogated the immunity in the context of those situations where a duty was violated that was over the public. But that's an affirmative matter that would defeat the claim. Well. For example, a 6199. It would, I would think. But I don't have standing to file that claim. I'm saying that you can look at that in the context of whether Jessica Patton is called upon to defend an action in a remote forum. Because it says in the statute who is joined in good faith with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county. And so how do you advance that position as we are attempting to do here? You have to say, well, look at the claim against what we think is the venue defendant that doesn't really belong in the case. And if you have a case alleged in one count that just doesn't exist under the law, I mean, negligent supervision, I think I can say with some confidence, as to a father, is barred by parental immunity. You get into murkier ground when you talk about willful and wanton supervision. It's left open, I think, by the case decision. But most of the cases that decide this are people who are intoxicated in their extreme situations. There's that Augsburger case, for example, that talks about a situation where a child was left in a closet asphyxiated. Maybe it was hypothermia. And they made a comment in there that had the plaintiff sued him for willful and wanton conduct, there would have been a cause of action in that context. But at the same time, there are no facts like that that have been established in this case. If you look at the testimony of Mr. Adams, and when you take the totality of the testimony, good faith, probable cause, not for the sole purpose of fixing venue, and you consider the fact that one of the counts doesn't exist and the other count, the willful and wanton count, has no facts in support of it, either in the complaint or in the record, that suggests that there is no real reason for him to be named a defendant other than to keep the case in St. Clair County. And I've also referenced in the brief an issue that I think is fair to consider, which is that Mr. Adams has no liability insurance. And I advance that basically based on the discussion in the case case where it was relied upon by the Supreme Court that the real party in interest in an intrafamily suit in a car accident is the plaintiff and the driver's insurance company. That's not a determinative issue, though, in the case case. It's mentioned as... They discussed it quite a bit, actually. I mean, are we supposed to decide who's in and who's out based upon whether they have insurance? Well, I think it's something that can be taken into account the way it was taken into account in the case. I'm not saying it's the be-all and end-all. It can't be by itself, but it's one thing. It's mentioned. Yeah. And what that means is even if there was a judgment against Mr. Adams, there would be no hope of satisfaction. And so, you know, at the end of the day, what's the point? Well... It's longer than the fixed venue. I mean, you'd have a hard time establishing any real reason that he should be brought in the case. I was thinking about this last night. You know, there are times when you file a case against someone for strategic purposes within the lawsuit. You know, if you have a lot of economic damages and you want to use the joint and several rules to your advantage as a plaintiff, there are those times. None of those exist here. Well, the Rule 237, if you have a homeless guy and you name him, and assuming that he comes in, you can cross-examine him. He becomes an adverse witness. You can do things under Rule 237, so that may not be another, quote, strategic use. Well, you have the subpoena power that would work the same way. A lot different. Well, it's... A lot different. Well, yeah, I mean, you still have... You've got to admit that if he enters, it's a lot different. Well, 237 is a powerful tool. Yeah, it's a very good strategic tool. But it's more in line with corporations and employees and that sort of thing than it would be, I would think, a single sole party. I mean, that's where you see it used to the strongest advantage. That's your experience? Pretty much, yes, ma'am. Okay. Well, moving on into the forum issue, if I could briefly. I think my strongest points on that are that this is one of those cases where the possibility of a scene view could be extremely important. I mean, this was an intersection, and if we are in St. Clair County, the possibility of a view is foreclosed entirely. The other thing is there were 20 law enforcement personnel, firefighters, first responders, that were involved in the investigation and the workup of this occurrence in West Frankfort. Benton is nine miles from West Frankfort, and it's nearly 100 miles to Dulles. And so we do have supporting that motion the affidavits of the sheriff, the chief of police, and the fire chief, all establishing that the people that respond were residents of Franklin County and that it would be disruptive to the administration of justice and the services they provide to have the case over in St. Clair County. And I think those are probably the strongest problems that we have on that point. The trial court gave absolutely no reasoning for its decision in its order, in its written order, which recently this court has commented upon. I've seen those decisions. As well as the Supreme Court. My question to you is, what do you believe Judge Kelly used in order to make his finding? Which one? Which on the form of nonconvenience, or ignored, probably from your position. From my position, I think that this case really does, it was one of those few cases where a scene view could be very important to the trier fact. And that wasn't taken into account at all. And how will we know that? From the record? Well. The transcript? You know, I guess I'm assuming that because I think it should have been given more weight. No, I mean, will there be some discussion of that in the record? In the transcript? I can't answer that without prospecting the record accurately. Okay. I know we brought up a lot of things, but whether that was touched upon, I can't say. Certainly a view would be an important possibility. I think the form of nonconvenience is a possibility. I think that's correct. And that's basically our position, unless there are any other questions. Do you think that this court should remand for a fuller hearing on Judge Kelly's reasoning? Or do you think that your affidavits and the record is sufficient? Well, that's a tough question. One we must answer. We don't know what Judge Kelly's reasoning was, and since this court is required to defer to a great extent to that reasoning under the review standard for a forum, remand may be appropriate for articulation of exactly what the judge had as reasoning. I can see that in that context. Less so in the venue matter, because that is a de novo review. There is not a lot. I'll jump back to the venue issue if I could for a minute, because the only case that I thought that was particularly instructive on that was the antihospital case, Justice Wexton's case from a few years ago. And he did go through the elements under the statute. You know, what is good faith? He said it's not possible to define that. What is what? Good faith. I think the statute, the case says it's hardly capable of an exact definition. And what is probable cause? They talked about that being the reasonable belief in the validity of your claim. But then you get to the issue of not being the sole purpose of fixing venue. I'm not able to articulate from the plaintiff's position another reason to sue Brandon Adams other than to fix venue in St. Clair County. Another issue that I should bring up is that this is a mother suing a father, and there is a question as to whether or not the immunity is extinguished by the death of the child. This Augsburg decision says no. That is not true. The immunity was in force at the time that the discretion was exercised in terms of supervision. And particularly in this case, you have a daughter that the two of them still are able to raise or required to raise. And so you have a lawsuit in the midst of this family setting, which is obviously unsettling from a domestic perspective. And all those reasons support finding an immunity to exist, and that this case is not a proper case. Let me ask you this. You've got a father, admittedly a father. You've got a father who is assuming some supervisory responsibilities as far as the deceased child is concerned. There's a question as to whether those were exercised. There's a question that's pleaded as to whether they were violated in a willful and want manner. Despite the fact that he's transient, he's broke, and he's probably judgment-proof, let me flip your argument. Wouldn't failure to join him wherever he is be malpractice on the part of a plaintiff's attorney who took this case? I'm not criticizing the fact that the plaintiff's attorney brought the case, but I do think it would be malpractice attorney on the defense lawyer to not challenge the fact that he brought the case. I think he would expect, he or she would expect a challenge on every point. But one does not commit malpractice by bringing ridiculous or specious suits. Wouldn't it be malpractice for a plaintiff's attorney not to have joined the father? Well, I think that it's proper to always try to push the law a little farther than the law goes, and I commend my opponent for that attempt. But I also think that it's appropriate for the court to say, well, you've tried plaintiff's counsel, and this is one that we must tell you that you cannot pursue because it is foreclosed by the law. So that's, I guess, the best answer I can give you. I'm still stuck on Justice Case's thought about whether we're confined by the pleadings. I'm very concerned about that because I don't know what case law has been cited that tells me that I'm supposed to go back in and rule from what, because the record is what you decide to put in or the other side decides to put in. We don't know if we have the entire record. So it causes me concern when you say, well, go into the record. The record is maybe not what's in the trial court. You understand what I'm saying? Yes. I don't think that's a concern in this case. I think everything that was in the trial court is before this. But what I was really thinking about was, you know, the old Lincolnism about calling the tail a leg doesn't make it a leg. If you call this conduct willful and lawful, then you can have any parent, any father, just by characterizing his misconduct as willful and lawful. But I don't think, well, do you think that we are in a position to make that decision? That's not our decision to make, is it? If there's no overview of the law, the facts need to be looked at. But that's not what Judge Kelly ruled. He didn't rule that count two was an adequate parent. He ruled on the venue issues, the good faith, the basis for joining. As I read his order, he's not saying, well, I think count two alleges a sufficient cause of action, does he? Well, go ahead. He says parental immunity does not extend in this instance between the estate of Logan Adams and Brandon Adams, unless it pertains to a cause of action premise non-negligence. I see that, but the next line says good faith. Responding to good faith. He's not saying that, well, is good faith the same as a count sufficient in law as a 2-619 motion? Is good faith equivalent to that? No. I think they're two different concepts. I do, too. Entirely. That's why I keep asking the question. Well, I think that it's fair to look at the record to determine whether or not this court would agree with that finding. With the good faith finding? Yes, Your Honor. Not whether or not there was a sufficient cause of action alleged in count two. I think that's got to be a component of good faith. If there is no such cause of action, and however it's alleged, it would be appropriate to examine that, looking at the merits of the good faith issue. That's just one element of the venue. It is just one. Okay. Thank you very much, Mr. Proctor. Thank you. I appreciate your time. Thank you, counsel. If you need a little extra time, you're welcome to have it. May it please the Court. Counsel. Good morning. My name is Bruce Cook, and I represent Melissa Yarber. She's the mother of Logan Adams, who's the subject of this wrongful death case. Before we get into the specifics of the argument, I'd like to expand on the facts just a little bit. You see in their brief, the appellant describes St. Clair County as a remote forum with virtually no connection to this occurrence. That's not accurate, and I'd like to correct it. This case revolves around the death of a four-year-old boy, Logan Adams. Logan Adams was a lifelong resident of St. Clair County. He was born there. He lived there. He's buried there. He lived with his mother, Melissa Yarber. Melissa Yarber is a special administrator in this case. She's going to be the witness at trial. Melissa Yarber, lifelong resident of St. Clair County. Brandon Adams, the child's biological father, who took him to a party in West Frankfort where he was hit by a car. He's a defendant in this case. He will be a witness in this case. Mr. Adams is a resident of St. Clair County. He moved there when he was a teenager. He graduated from Belleville East. Lindsey Shelton, Mr. Adams' girlfriend, who accompanied all of these children to West Frankfort and is the mother of four of them, she will be a witness in this case. She is a resident of St. Clair County. This tragic accident was witnessed by five minor children, ages 4 to 10, all of these children that traveled with them to West Frankfort, St. Clair County residents. To say that St. Clair County has no connection to this case is not accurate. St. Clair County has the greatest connection to this case. The legal arguments that we have before us today are venue and interstate forum nonconvenience. I'd like to start by talking about venue. The appellant has three prongs attached to our venue position, the venue of St. Clair County. The first prong is the sham prong. The second is the residency prong of Brandon Adams. And the third is the parental mutiny. I'd like to start with the sham prong. The court is aware of venues and the venue is proper in the county of residence of any defendant who is joined in good faith. They say that we have sued Brandon Adams only to fix venue in St. Clair County. And they were talking about why would we do that. Mr. Price brought that to his argument. And he said there's no reason to sue Mr. Adams. There's an excellent reason to sue Mr. Adams. Their position cannot be reconciled with the testimony of their own client. In her deposition, Defendant Jessica Patton, the lady who was driving the car, the head young loading, testified unequivocally that this accident was Brandon Adams' fault. She's critical of him for not supervising his son. She's critical of him for being inside of the party while his child was allowed to play in the street. She goes on so far as to say she's forgiven him, but that's a problem. This case is going to be defended by Ms. Patton by blaming Brandon Adams. We've sued him not to fix venue, but so that there's not a new chair. So that we have Rule 237 so that he can attend as he attended his discovery deposition and defended himself. The second problem with their venue challenge is the residency of Brandon Adams. Brandon Adams was served in this case in St. Clair County. He was given notice of his discovery deposition in St. Clair County. He attended his discovery deposition in my office in St. Clair County. At his discovery deposition, he testified that he resides in St. Clair County. He testified, as I mentioned earlier, to Lincoln Belleville East. He moved here when he was 13. During his deposition, Brandon Adams presented a state ID, a valid state ID, that lists a St. Clair County residence, St. Clair County address. Now, Mr. Adams testified that he stays at different places, including his mother's house and his girlfriend's house. However, he testified that he always stays in St. Clair County. Everybody has to live someplace. And in this case, the evidence is uncontradictive. Brandon Adams lives in St. Clair County. The third problem is the parental immunity case, which Mr. Price spoke on at length. And they rely on holding in a Cates v. Cates. And that reliance is misplaced. Because in Cates v. Cates, the court discusses a point. This immunity was started back in the 19th century. And times have changed. They briefly touch on the emergence of liability insurance. They talk about that now children can sue grandchildren, grandparents. They talk about third-party contribution claims that are now viable. They talk about instances where there is a public duty. But they state clearly they talk about instances where a child can sue a dead parent. But the Cates decision states specifically that when the relationship ends, so does the immunity. In this case, if there ever was immunity, tragically it ended in June of 2014 when young Logan Adams died. The reality is that in this case, the parental immunity wouldn't apply against Mr. Adams because there is a viable willful and wanton count in this claim. The decision is including the other. Mr. Cook, do you even need a willful and wanton allegation if there is no immunity? I don't believe I do, Your Honor, but I did want to anyhow, just in case, as a precaution because the facts merited it, to be quite honest, in my opinion. But I'd like to point out that we presented the facts to the judge. The judge gave me the amendment complaint. There was an order that was written up at the time. I signed the order. The defense made no objection to the order. The order was signed by counsel for the appellant. It was entered in. We amended the complaint. That complaint has never, with the willful and wanton count, that count has never been challenged in circuit court. There has never been a 615 motion. There's never been a 619 motion. There's never been any type of dispositive motion. I don't even believe it was brought up at the hearing on the genuine form motion. It's being brought up for the first time in the appellate court, and I don't think that's appropriate. But anyhow, they've also allowed this case to be transferred to Franklin County. I just want to make sure now. Are you kind of done with your venue argument? You're moving into forum nonconvenience? That was my planning on it, of course, unless the court has questions on that. No, I just want to make sure I'm understanding the path we're going, because I do have some questions on the forum issue. And I'm trying not to be an introvert. No, you're doing a very fine job. Thank you. They've also taken the position that this case should be taken to Franklin County based upon the doctrine of forum nonconvenience, interstate forum nonconvenience. This court is well-versed in the law in this area, especially in the Langenhorst case, which I think we're in the same courtroom where Langenhorst was argued. And I'm sure the court is also aware from the Doe v. Moose Lodge case that when the plaintiff's chosen forum is their home forum, you get a substantial deference. But in Langenhorst, the Supreme Court said that the burden is on the defendant to show that relevant public interest and private interest factors strongly make a transfer to the defendant's forum. In this case, the defendant fails in both areas. Private interest factors in court laws includes convenience of parties, ease of access to sources of proof, and the practical considerations that make cases easy and less expensive to try. In this case, I mentioned numerous St. Clair County witnesses in the beginning of my argument. But in addition to the mother, the decedent, the father, the five minor children, the girlfriend who accompanied him, there's numerous other witnesses in St. Clair County that come into play in a wrongful death case. One of the elements of damages is the burial cost. Logan Adams' service and funeral were held at Brenner Funeral Home in Belleville. As a result of this accident, the mother has had to go through a grief counseling. Her counselor is located in St. Clair County. And one of their burdens is to show that, under Langenhorst, that it would be more convenient for not only his defendant but all the defendants. And you have not responded to any of those affidavits of inconvenience. And I'm wondering why. Your Honor, I think those are canard. It is that there's no evidence. None of the people that he's identified are eyewitnesses in this case. In Langenhorst… Well, there will be no eyewitness except Ms. Patton. No, there will be five minor children who all live in St. Clair County that were playing with Logan, that she stopped the car waiting for them to clear, and saw her run over him. The eyewitnesses all live in St. Clair County. So, you… Are you really that far along enough to say that? I mean, are all of these children standing in exactly the same spot to see this child run over? Your Honor, she stopped the car. These kids were playing in the street. There are statements from the children contained in the record, I believe. But these children were all out playing. They were engaged in horseplay in the roadway. Ms. Patton was driving home from getting an ice cream cake. They were having friends over. She saw a group of kids in the street. She stopped her car. She waited for the kids to clear. She thought they had cleared. She didn't honk her horn, didn't look out the window, didn't get out. The little boy was tragically in front of her car. She didn't see him. She pulled forward. She heard a crunching, didn't know what it was, and kept going. The Traffic Accident Reconstruction Report, which is many, many pages long and which examines the computer, I guess, that was on her car, that she was only going three miles or so at the time she caused this tragic death, all of that is closer to Franklin County. All of those troopers, everybody, the coroner, everyone is in Franklin County, and they've filed affidavits of inconvenience. And they've also, interestingly enough, filed affidavits from someone who at least says they've made measurements, so we know it's 90 miles from West Frankfort to the St. Clair County Courthouse. So as we look at convenience, which is what we have to look at, all of these police officers, the possibility of the view, do you agree that there's a strong possibility of the view? I don't know why that would be. Your Honor, I've handled a lot of automobile cases in my practice, as Mr. Price does, and I've never gone to a scene. We have videotape and photographs that I find to be very well. I don't know why that would come into play. I also don't know why all these people would need to testify. These are firemen and first responders. I don't know what they have to offer for this case. I'll also say that on the record of the hearing, these essential witnesses, I've offered to drive to West Frankfort for their deposition, but none of them have been taken. Well, I think the rules require that the depositions be taken in the county where they reside, right? So, I mean, you really don't have a choice on that. So all the depositions are going to be taken in the county where they reside, right? So I'm looking for why is it more convenient? Where are the factors that weigh inconvenience for it to be in St. Clair County as opposed to pulling all these people 90 miles to talk about an accident that occurred in Franklin County? It's convenient because the sources of proof are more available in St. Clair County. It's convenient. The little boy's doctors are here. But the child is deceased. Right, but his doctors may offer relevant testimony regarding his health before the accident. His mother is here. His grandma, who lives with her, will testify. It would be inconvenient for them to go to Franklin County. Okay, but that's not in the record. Have you offered any evidentiary material that would put that into the record? No, Your Honor, I haven't offered affidavits of anyone that says it would be inconvenient to drive to Franklin County. I assume it was inherent that it would be difficult for my client, who's a school bus driver, to travel to Franklin County, along with the minor children that may testify in this case, as well as, as Mr. Price says, the father, who's unemployed and judgment-proof, how he will get to Franklin County. He rode his bicycle to his deposition at my office. I thought that it was inherent. And, in fact, that is in the record that he rode his bicycle to the deposition. He doesn't have a vehicle. What about our Supreme Court's directive to trial courts that they should identify the factors that they used in making the determination? Do you think that we should remand this case, or do you think the record is sufficient? I do not, Your Honor. I think the record is sufficient. We had a lengthy hearing on this issue in front of Judge Kelly. But he gives us no guidance. Well, I think that it's inherent that it was based on the record, the motions, Mr. Price's motion, my response, my attachments, and the record he had in front of him. It was a lengthy hearing. I think it took 15 or 20 minutes. It wasn't something that he ruled from just based on the motion. We did have a lengthy hearing, and I think you are sufficient in that it should not be remanded. Justice, do you have any more questions on the record? No, it's just as I'm sure, and I'll make the same statement I made to Mr. Price, and that is this Court is recently telling trial courts that, you know, we're in a tough spot. It's not clear what we're supposed to do, at least in my view. When you say, well, use the record, it kind of leaves us in a quandary, and yet you don't want to cause prejudice to your client to have to wait, go through another hearing. So that's why I'm asking you about the inconvenience in the record that you may have established to refute his inconvenience. Well, I think the reality is, Your Honor, is this involves defendants and plaintiffs from different counties. It's going to be inconvenient for somebody, and they have the burden. This is the plaintiff's home forum. Home forum, they live here. It's a child from St. Clair County. It's going to be inconvenient for somebody. We pick St. Clair County because it's a home forum, and you get substantial benefits. It is showing in the witnesses in St. Clair County that his two treating pediatricians are here and his grandmother that he lives with. All of the relevant witnesses that are most certainly going to testify reside in St. Clair County. The first respondents, the firefighters and the policemen, I don't know what they would have to offer in this case. I don't know why all of them would have to testify. We haven't made any allegations that she was intoxicated, that she acted strangely. I don't believe she was issued a traffic citation. I don't know why it would be necessary for 20 first responders and policemen to come here. I believe that there's actually more relevant witnesses in St. Clair County, and I think there's a greater connection to St. Clair County than there was in the Langford case. The court's also supposed to balance the public interest factors. And, you know, the considerations for resolving controversies locally, the unfairness of exposing expense on remote forums and adding congestion to an already congested docket. You have a statistic in front of you, and the court's familiar with that, with the stats for St. Clair County. In 2014, three cases were taken to verdict. The average time from filing the verdict was 36 months. The defendant says you can get a quicker trial in Franklin County, but doesn't offer any evidence to that effect. I can't imagine that a straightforward automobile accident would take longer than two or three days to try in St. Clair County. Certainly, that would congest the docket. Do you think the docket congestion in St. Clair is because of the amount of cases filed? I don't, Your Honor. Just clearly the amount? Your Honor, I don't think that there is a congested docket in St. Clair County. My practice is 90% St. Clair County and only 10% Madison, and I never have problems getting a trial date. Last month, I had an arbitration. The defense rejected the arbitration. Judge Rudolph gave us a trial date, January 23rd. So, I've never encountered a congested docket in my 20-year practice in St. Clair County, or I couldn't get a trial in a reasonable time. What about the length of time? Do you think that the length of time is skewed by the number of form non-convenience motions filed for L cases in St. Clair County? Your Honor, I wouldn't have any idea, but I don't think so, and I can tell you I don't come here just a whole lot and don't have form non-convenience cases come up a whole lot. Now, I know there's different areas of the law that I practice and that it's becoming more common, but that would be outside my area of knowledge, Your Honor. And just to finish up, if I could. Sure. In deciding local controversies locally, what could be more important to the people of St. Clair County than the death of one of its own children? And not just that, but the death of one of its children that were witnessed by five other kids who live in St. Clair County. Thank you for your time this morning. I surely appreciate it. Thank you, Counsel. Counsel? Thank you. I'll try to address just a couple points. Justice Chapman, I think you asked about whether or not a willful and wanted account was really needed. And I would call the Court's attention to this quote from the Cates case. We conclude that the immunity should afford protection to conduct inherent to the parent-child relationship. Such conduct constitutes an exercise of parental authority and supervision over the child or an exercise of discretion in the provision of care to the child. Except that, as I think Mr. Cook pointed out, Cates also addresses that the whole purpose behind the immunity is to further the parent-child relationship. And once that purpose is no longer dissolved as it is here with the death, there's no purpose for the immunity. That's the second thing I wanted to address that was brought up. Four years after Cates, there's this Commerce Bank v. Osberger, which was the foster children. And in that case, the Court said, The subsequent death of the child does not bear upon the freedom of the natural parent or foster parent needs to deal with the child as of her lifetime. Which certainly gives the impression that that Court was under the impression that even if the child had died, there was an immunity at the time of the alleged neglect. And so I think that's inconsistent. Well, I think Cates is pretty clear that it says the immunity will not be applied. It does say that. I mean, they're pretty straightforward about it. It's just my point. Yeah, in this case, four years later, it's at odds with that. And it makes sense. You know, if the immunity is to provide decision-making immunity during the time the child's alive and the child dies because of that, what reason for aggregating the immunity exists? It was a decision that was made. You'd still have parents suing one another because of the deceased child. I mean, I can see, I guess, both sides. But I think a stronger argument is that the immunity should bar a claim of that nature. And, Justice Cates, you had mentioned whether or not this issue about the validity of the Wilhelm Wanten issue had been brought to the trial court's attention. And it is in my motion that was filed, and it's also in the argument during C-009 and C-270 in the record that's before the Court. So that issue was up for consideration in the context of the question of immunity. I didn't file an entry of appearance for Brandon Adams because I don't represent him. And, you know, these issues are very easy to waive. And so you want to advance this to the full extent possible. And I think I've thought about this a long time. I think this is the proper vehicle to do it for a co-defendant. What do you think about the empty chair defense? I don't think that that's real. The child's in the street. Whether the child's in the street because of some conduct of somebody else, my driver encountered a child in the street. But your client is blaming the father. Well, you know, Mrs. Patton doesn't know anything about the circumstances of Brandon Adams. Well, to the extent she doesn't, you can still blame the father. You can still point to the empty chair under Leonardi? Leonardi's the cause of the case, yeah. Yeah, but what does that do to exonerate someone's driving? A defense lawyer may try that, may not. It depends on how the case gets put together. But that isn't precluded whether or not that party is a party or a witness. I understand. But going into the case, as Justice Goldenhurst was saying, you don't know who's going to be defending, what you're going to do. So isn't it the plaintiff's obligation to include somebody who may be pointed at? I think it's entirely appropriate to include them. And I also think it's appropriate to challenge that. But if it's entirely appropriate to include them, haven't you just admitted good faith? It's the attempt that's appropriate. And the challenge, then, is properly mounted. But you're also saying, though, you don't even know how it would play out in a trial, you know, the empty chair scenario. I don't see how I could possibly do that. The child's on the road. How the child got on the road doesn't have anything to do with the driving. There may be a factor that the jury can consider. But it shifts liability from your client. I don't know how you can say that with your experience to us that you know it shifts liability away from your client if she says, well, yes, I was only going three miles. But as Justice Chapman says, someone else did it. I mean, this child should not have been in the road. Clearly, children should not be in the road. I mean, we would all agree that children should not be in the road. Yeah. I mean, I don't think there's any doubt about that. So pointing at the person who allowed that, you would agree would shift liability. No, I don't think it would. The question is if it does. Go ahead, please. I don't see how it could because the question that my defendant is called upon to defend is the actions behind the wheel. Okay. Thank you for the time. Just for the record, to the extent there's any confusion with Cates versus Cates and my name being Cates, I had nothing to do with and was not involved in that decision, which is why I remain on this case. Record warrant and disclaimer. Counsel, we appreciate the briefs and arguments, and we'll take the case under advisement. Thank you.